Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 6156 | DATE | 3/6/2003 |
| CASE TITLE | English vs. Redding, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Defendants' motion for summary judgment [46-1] is granted. Case dismissed without prejudice for failure to exhaust administrative remedies. Al future dates are stricken, including trial date of 4/28/03. Case terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 07 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. Mailed by MD. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3/6/2003 date mailed notice | |
| MD | courtroom deputy's initials | 03 MAR -6 PM 3:02 FILED Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TERRELL ENGLISH, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JAMES REDDING and DIANE JOCKISH, ) <br> ) <br> Defendants. ) | No. 99 C 6156 <br> Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

In this action filed by plaintiff, Terrell English ("English"), alleging violations of his Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983 suffered while a prisoner at the Joliet Correctional Center, defendants, James Redding ("Redding") and Diane Jockish ("Jockish") (collectively "defendants") have moved under Rule 56, Fed. R. Civ. P., for summary judgment. The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a). For the reasons set forth below, the court grants defendants' motion.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the nonmoving

party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS STATED IN A LIGHT MOST FAVORABLE TO PLAINTIFF

At all times relevant to this litigation, English was incarcerated within the Illinois Department of Corrections ("IDOC") residing in Menard Correctional Center ("Menard") and temporarily housed in Joliet Correctional Center ("Joliet") in May, 1998 until June 3, 1998. (Def. L.R. 56.1 ¶ 1.) Jockish was working in Springfield, Illinois, as the transfer coordinator for the IDOC. (Def. L.R. 56.1 ¶¶ 6, 27.) Redding was employed by the IDOC at Joliet as a sergeant. (Def. L.R. 56.1 ¶ 14.) Prior to May of 1998, English had been a member of the Vice Lords street gang, but had since dropped his allegiance to the gang. (Pl. L.R. 56.1 ¶ 1.) While incarcerated, English had a general fear of retaliation from gang members and, therefore, sought protective custody. (Pl. L.R. 56.1 ¶ 2.) English was placed in protective custody while at Menard. (*Id.*)

English had minor children who were being provided for by the Illinois Department of Children and Family Services. (Def. L.R. 56.1 ¶ 2.) English's case was being handled in Cook County's juvenile court system, which required English's regular appearance in juvenile court in Chicago. (*Id.*) On May 13, 1998, English was temporarily transferred to Joliet from Menard

pursuant to a juvenile court writ issued on April 28, 1998. (Def. L.R. 56.1 ¶ 3.) The writ of transfer was issued to English from the Transfer Coordinator's Office of the IDOC and placed English in a section at Joliet containing general population prisoners, including a Vice Lords gang member from Menard. (Pl. L.R. 56.1 ¶ 4.) English claims that he reported to Redding, and other unidentified Joliet guards, his fear of the Vice Lords gang. (Pl. L.R. 56.1 ¶ 5.) English maintains that after reporting these fears, he was left in the general population writ unit. (Pl. L.R. 56.1 ¶ 6.) On May 29, 1998, while housed at Joliet, English was involved in a fight with some inmates, including an inmate referred to only as "Davis." (Def. L.R. 56.1 ¶ 13.) English sustained personal injuries in the fight. (Pl. L.R. 56.1 ¶ 7.) Redding intervened in the fight and issued both parties discipline tickets. (Def. L.R. 56.1 ¶ 15.)

After the fight, and after being returned to Menard, English filed an administrative grievance concerning his removal from protective custody at Menard. (Pl. Resp. to Def. L.R. 56.1 ¶ 48.) English also filed an administrative grievance concerning the discipline he received for the fight involving Davis. (*Id.*) Concerning the grievance on protective custody status, the Administrative Review Board ("ARB") found that English had not provided enough information to warrant protective custody. (Pl. L.R. 56.1 Ex. B.) The ticket was resolved by the Adjustment Committee rendering the grievance on the ticket moot. (Def. L.R. 56.1 ¶ 49.)

## DISCUSSION

English claims that both defendants failed to protect him from the fight that occurred on May 28, 1998, in violation of the Eighth and Fourteenth Amendments pursuant to 42 U.S.C.

3

§ 1983. While § 1983 does not contain an administrative-exhaustion requirement, the Prison

Litigation Reform Act ("PLRA") has one for prisoners.[1] The PLRA states,

> No action shall be brought with respect to prison conditions under section 1979 of
> the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal
> law, by a prisoner confined in any jail, prison, or other correctional facility until
> such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 534 (7th Cir. 1999). The

term "prison conditions" as used under the PLRA refers to "all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). English's

failure to protect claim clearly falls within the broad reach afforded the phrase "prison

conditions." *E.g., Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002) ("*Porter* squarely

precludes Clifford's contention that his failure-to-protect claim is outside § 1997e(a)'s scope.");

*Cherry v. Edwards*, No. 01 Civ. 7886, 2002 WL 31619038, at *2 n.2 (S.D.N.Y. Nov. 20, 2002).

As is apparent from the record, English presented two grievances to IDOC. First, English

grieved being removed from protective custody at Menard. (Pl. Resp. to Def. L.R. 56.1 ¶ 48.)

English also grieved being disciplined for his role in the fight. (*Id.*) Defendants nonetheless

argue that English did not specifically grieve the actions he brings in this law suit. In response,

English argues the defendants have not established a factual basis for this court to determine

what administrative remedies were available to prisoners in the IDOC in 1998 because

defendants have cited no Illinois statute or IDOC regulation informing the court of the scope and

---

[1]Sometime after the filing of his Complaint, English was released from incarceration. This does not affect the procedural requirements under the PLRA, as a plaintiff's status as a prisoner is determined as of the time he brought the lawsuit. *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002).

4

applicability of the grievance process. English also argues that he satisfied the administrative-exhaustion requirements by filing the two grievances listed above.

English's position that the IDOC has not established a factual basis for the court to determine what administrative remedies were available in 1998 is not persuasive. According to an affidavit submitted by an ARB Chairperson, an inmate must first attempt to resolve grievances with his counselor. If the grievance remains unresolved after such informal efforts, or involves a disciplinary proceeding, the inmate may submit a written grievance on a grievance form to the facility Grievance Officer. The Grievance Officer then completes an investigation which is forwarded to the Chief Administrative Officer, who makes a decision. The inmate may appeal that decision to the Director of the Department, which is reviewed by the ARB to determine if a hearing is needed. (ARB Aff. at 1.) This affidavit adequately illustrates to the court the grievance procedures the IDOC provided.

With respect to his argument that the grievances he presented were sufficient to satisfy the administrative-exhaustion requirements, English relies on *Lewis v. Washington*, 197 F.R.D. 611 (N.D. Ill. 2000). In *Lewis*, plaintiffs, a group of inmates, brought suit alleging constitutional violations from being placed in "Category IV," or "unapproved protective custody" after they formally grieved the denial of "approved" protective custody status. *Id.* at 612. In Category IV status, plaintiffs were denied access to a number of activities and privileges, including communal religious services, educational opportunities, drug and alcohol rehabilitation programs, the gym, hot food, the law library and were confined to a small recreation area. *Id.* After the plaintiffs brought suit in federal court, defendants, all supervisory personnel of IDOC, alleged that the plaintiffs had not grieved all of their claims and that the case had to be dismissed. The court

construed defendants' argument as implying that the plaintiffs had to grieve each and every grievance they had with Category IV placement, for example, that such placement did not allow inmates to attend religious services or confined them to a small area. *Id.* at 614. The court rejected such an argument, stating that "[t]he plaintiffs have done enough if they have exhausted their remedies with regard to their placement in Category IV in part because of the allegedly illegal conditions in effect there. They need not have done so with every separate beef they have with the operation of Category IV." *Id.*

*Lewis* is distinguishable. *Lewis* addressed the question whether the administrative remedies in that case had been exhausted on a motion to dismiss, not on summary judgment as in this case. The court in *Lewis* acknowledged this in refusing to consider an affidavit set forth by the defendants. *Id.* Moreover, the court in *Lewis* concluded that the plaintiffs' broad grievance encompassed the separate grievances in that case. The court cannot say the same of English's grievances here. The first such grievance, addressed by the ARB on June 18, 1998, complained of English's removal from protective custody after he returned to Menard. (Pl. Resp. to Def. L.R. 56.1 Ex. B.) The second grievance, addressed by the ARB on July 23, 1998, complained of the disciplinary ticket that English received after the fight. (Pl. Resp. to Def. L.R. 56.1 Ex. C.) Neither grievance complained that defendants had knowledge of any of English's protective custody needs and ignored them prior to the fight at Joliet. Nor did either of the grievances complain about the defendants' failure to protect English at Joliet.

The Supreme Court has stated that Congress' intention in requiring mandatory administrative-exhaustion requirements was to "reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 525. The Court noted that administrative requirements may

cause "corrective action" to be taken in response to an inmate's grievance and might improve prison administration and satisfy the inmate. *Id.*, citing *Booth v. Churner*, 532 U.S. 731, 737 (2001). The Court further noted that internal review might "filter out frivolous claims." *Id.*, quoting *Booth*, 532 U.S. at 737. Finally, the Court concluded that when cases actually do reach federal court after the administrative remedies have been exhausted, the court's "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*, quoting *Booth*, 532 U.S. at 737.

None of these broad policy goals is served by allowing English to proceed in this suit after not specifically exhausting the claims he brings forth. There has been no opportunity for "corrective action" to take place to satisfy English with respect to his claim that Redding and Jockish failed to protect him. No internal review has examined whether English's claim is frivolous or possesses merit. Moreover, the failure to raise these claims administratively means no administrative record clarifying the controversy is present for this court. As such, the court concludes that English has not exhausted his administrative remedies with respect to the claims he brings in this action.

The Seventh Circuit has made clear that dismissal is the only appropriate remedy when a prisoner has failed to exhaust administrative remedies under § 1997e(a). In *Perez*, the court specifically counseled that a court "must not proceed to render a substantive decision until it has first considered § 1997e(a)." *Perez*, 182 F.3d at 536. As it is clear in this case that English has not satisfied required administrative remedies, this case must be dismissed. While the court is reluctant to dismiss a case on this procedural ground after the case has been pending for over

three years and likely no administrative remedies could now be satisfied, the Seventh Circuit case law is clear that those remedies must be satisfied before a substantive decision is reached.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted [#46]. This case is dismissed without prejudice for failure to exhaust administrative remedies. Case terminated.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: March 6, 2002